IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JAMES T. JACKSON,                                      :

      Plaintiff,                                     :

vs.                                                    :   CIVIL ACTION 03-0660-CG-L

STATE OF ALABAMA[1], et al.,                           :

      Defendants.                                    :

REPORT AND RECOMMENDATION

     Plaintiff, an Alabama prison inmate proceeding pro se and in forma pauperis filed a Complaint

under 42 U.S.C. § 1983.  This action was referred to the undersigned pursuant to 28 U.S.C. §

636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on defendants' Motion for

Summary Judgment (Doc. 12), and plaintiff's responses to defendants' Motion.  (Docs. 16 and 17).

For the reasons stated below, it is recommended that defendants' Motion for Summary Judgment be

granted and that plaintiff's action be dismissed with prejudice.

I.  SUMMARY OF ALLEGATIONS

     From its review of the record, the Court summarizes the parties' allegations which are material

to the issues addressed in this Report and Recommendation.  According to plaintiff, on or about the

dates of September 13, 2003, and September 23, 2003, while plaintiff was incarcerated at G. K.

---

[1]While plaintiff lists "State of Alabama" in the style of this action, the only defendants properly
identified by plaintiff in his Complaint are Warden Jerry Ferrell, Warden Walter Myers, and Lieutenant
Richard Hetrick.

Fountain Correctional Center ("Fountain"), he, along with other inmates,[2] was forced to stand under the "hot sun" inside "a locked fence for hours at a time."  (Doc. 1 at 5).  Plaintiff contends that he should not have been made to stand outside in these conditions, as he is a 52 year old man with high blood pressure.  (Id.).  Further, plaintiff contends that he and other inmates have on occasion been awakened at approximately 2:45 a.m. to 3:00 a.m. and have been forced to stay in a "dayroom" for several hours until they were taken outside and locked in the fenced area for approximately ten hours.  (Id. at 5, 8).  Plaintiff adds that this fenced area where he has been forced to stand is in public view.  (Id. at 8).  Plaintiff alleges that inmates are placed in this area because of being late for work, and for not being able to work as hard as other inmates.  (Id.).  Plaintiff contends that this treatment "does more psychological harm by inflicting the use of fencing of inmates inside the gate," and that the practice is "barbarous" and "inhumane" and has caused him extreme mental anguish.  (Id.).  Plaintiff alleges that being fenced in public view makes him feel like an "animal."  (Id.).

On October 2, 2003, plaintiff filed the present § 1983 action, alleging that defendants Warden Jerry Ferrell, Warden Walter Myers, and Correctional Officer Supervisor I Richard Hetrick violated his Eighth and Fourteenth Amendment rights by allowing him to be awakened early in the morning(s) and allowing him to be forced to remain outside the fenced area for hours during the day(s) at or

---

[2]Plaintiff's complaint is unclear, but to the extent which he is attempting to make claims on behalf of other inmates, plaintiff has no standing to do this.  See Powers v. Ohio, 499 U.S. 400, 410, 111 S. Ct. 1364, 1370, 113 L. Ed. 2d 411 (1991) ("In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.").

around September 13, 2003, and September 23, 2003.[3]  (Doc. 1 at 5).  Specifically, plaintiff asserts

that he complained to defendant Warden Ferrell many times regarding the allegedly unconstitutional

treatment, and plaintiff contends that defendant Ferrell refused to investigate or if he did investigate, the

investigations were "flawed and biased."  (Id. at 6).  As to defendant Warden Myers, plaintiff contends

that because of "personal involvement," this defendant did not, in response to plaintiff's complaints,

reasonably investigate or remedy the treatment made the subject of this action.  (Id. at 6).  Finally, as to

defendant Hetrick, plaintiff alleges that Hetrick was the shift commander "on that day" and did nothing

to prevent the violations.  (Id.).  Notably, plaintiff complains only of "psychological harm" and seeks

monetary damages in the amount of $5000 from each defendant.  (Id. at 11).

In the Special Report and Answer filed on behalf of defendants Ferrell, Myers, and Hetrick on

July 6, 2004, defendants deny plaintiff's allegations and assert that they are immune from suit under the

Eleventh Amendment and principles of qualified immunity.  (Doc. 12).  Defendants further respond

that, on the dates of September 8, 10, and 17, 2003, and October 16, and 29, 2003, plaintiff did not

report for work, despite being declared "physically capable of performing his particular job assignment"

by prison medical staff.  (Id. at 4; Ex. B at 2).  Plaintiff's job assignment was "Farm # 8," which is

considered unpopular by the inmates at Fountain.  (Id.).  According to defendant Ferrell, "[w]hen an

inmate is scheduled to work on a farm squad and he refuses to go to work with his particular squad, the

---

[3]Plaintiff is unclear in his Complaint as to whether he is referring to violations which allegedly
occurred on the actual dates of September 13, 2003, and September 23, 2003, or whether he is
referring to numerous days during that period of time.  At times in his Complaint, it appears that plaintiff
is making general allegations of various violations occurring over a long period of time.  For purposes of
this action, this Court will consider the two dates which plaintiff has provided as the actual dates of the
alleged violations.

inmate is required to remain in a containment area while his assigned farm squad is working." (Doc. 12, Ex. B at 2). Defendant Ferrell explains that the inmate who refuses to work is released for lunch with his squad, and given the opportunity to work with his squad during the afternoon. (Id., Ex. B at 2). If, after lunch, the inmate refuses to work with his squad, he is returned to the containment area. (Id., Ex. B at 2). The inmate is released from the containment area when his squad returns to the facility in the afternoon, and is allowed "to enter the facility for the evening meal and to attend other programs or activities as all other inmates." (Id., Ex. B at 2).

According to defendant Ferrell, the containment area referenced by plaintiff in his Complaint is approximately 21' by 55' in size and contains three wooden benches, a cooler of fresh water, and a porta toilet. (Id., Ex. B at 3). Defendant Ferrell adds that the containment area is a "well-drained grassy area with a portion of it concrete." (Id., Ex. B at 3). The containment area which plaintiff references in his Complaint is known as the "sallyport annex area" and is located on the north side of the institution, with the closest public highway approximately 100 yards east of the annex area. (Doc. 13, Ex. C at 2).

According to Warden Ferrell, an inmate is free to walk about, sit or lay on the benches, use the bathroom, and drink as much water as needed while in the containment area, and that the purpose for having the containment area is so that the inmate who refuses to work is prevented from "returning to his dorm and going to bed, watching TV or participating in recreational activities while his contemporaries are outside working." (Doc. 12, Ex. B at 3). Further, the daily schedule of inmates begins with checkout between 7 and 7:30 in the mornings, with a return for lunch around 10:45 a.m.

4

Inmates return to work at 12:30 p.m. and complete work between 3:00 and 3:50 p.m.  Inmates in the containment are released just after the work squad has entered the facility.  (Id., Ex. B at 3). Moreover, defendant Ferrell advises that "inmates are not allowed to work on farm squads when the heat index exceeds 102° nor when the wind chill factor reaches 32°."  (Id., Ex. B at 3).  Should an inmate have a medical appointment or voice a medical complaint, that inmate is "excused from the confinement area and escorted to the Health Care Unit to attend that need."  (Doc. 12, Ex. B at 4).

Regarding early morning "wake up" times, defendant Ferrell notes that "inmates who refuse to report for checkout are placed on an early morning wake up list" beginning at approximately 3:30 a.m. (Id., Ex. B at 4).  Those inmates are allowed to eat breakfast and are then "escorted to dorm #1 TV room" where they remain until approximately 6:30 a.m., when they are escorted to the checkout containment area to be supervised until the morning checkout begins around 7 a.m.  (Id., Ex. B at 4). According to defendant Hetrick, this "dayroom" area is heated during the winter, contrary to plaintiff's allegations of freezing temperatures in this area.  (Doc. 12, Ex. C at 3).

On September 3, 2004, the Court ordered that defendants' Special Report and Answer be treated as a Motion for Summary Judgment.  (Doc. 15).  The Court advised plaintiff that he could file a response to the motion on or before October 4, 2004, and the Court advised the parties that it would take the motion under submission also on October 4, 2004.  (Id.).  On September 28, 2004, plaintiff filed a Response indicating his desire to continue the litigation, (Doc. 16), as well as a Response in opposition to defendants' Motion for Summary Judgment, reasserting the claims alleged in his

Complaint.[4]  (Doc. 17).  In support of his Response, plaintiff has submitted his own affidavit, as well as

the affidavits of two fellow inmates.[5]  (Doc. 17).

## II.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted:

> if the pleadings, depositions, answers to interrogatories, and admissions
> on file, together with the affidavits, if any, show that there is no genuine
> issue as to any material fact and that the moving party is entitled to a
> judgment as a matter of law.

Fed. R. Civ. P. 56(c).  A factual dispute is "genuine" if the evidence "is such that a reasonable jury

could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986).  A fact is "material" if it "might affect the outcome of the suit under the governing [substantive]

law."  Id.; accord Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).

---

[4]In addition to reasserting his original claims, plaintiff's Response to defendants' Motion for Summary Judgment provides additional details regarding what plaintiff considers unconstitutional treatment while confined in the dayroom inside Fountain, and the containment area outside the facility. (Doc. 17).  Specifically, plaintiff claims that while in the dayroom, he was denied requests to use the restroom, denied requests for toilet paper, and exposed to extreme heat, cold, insects, and dampness from rain on occasion.  (Id. at 2-3).  While in the outdoor containment area, plaintiff alleges that he was forced to stand in the hot sun, and that the area had an odor which attracted insects.  (Id.).  As a result of these conditions, according to plaintiff, he allegedly experienced headaches, dizziness, blurred vision, vomiting, and high blood pressure.  (Id.).

[5]Plaintiff has submitted the affidavits of fellow inmates Artis Hiram, and James E. Hawkins, who both reiterate plaintiff's allegations.  (Doc. 17, Affidavits of Artis Hiram and James E. Hawkins).  In plaintiff's own affidavit, he disputes defendants' contention that he refused to work or was late to work, claiming that he was ordered back to his cell as part of a prison lockdown.  (Doc. 17, Affidavit of plaintiff).  Plaintiff claims that he attempted to report for work, but his squad had already departed the facility.  (Id.).  Defendants have provided disciplinary citations which document the fact that plaintiff failed to report for work, or refused to work, on September 8, 10, 17, and October 16, and 29, 2003. (Doc. 12, Ex. B at 5-10). However, plaintiff fails to provide the Court with the date(s) that he claims that he did in fact report for work.  (Doc. 17, Affidavit of plaintiff).

Moreover, what are considered to be the "'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes." Cottrell v. Caldwell, 85 F.3d 1480, 1486 (11th Cir. 1996).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52. "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and, in deciding whether the movant has met this burden, the Court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Tipton, 965 F.2d at 998-99. In addition to demonstrating that there is no genuine issue of material fact, the movant must also satisfy the ultimate burden of persuasion on the claim by showing that it would be entitled to a directed verdict at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993).

Once the movant satisfies its initial burden under Rule 56(c), the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis omitted). "'[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" Tipton, 965 F.2d at 999 (quoting Anderson, 477 U.S. at 255). However, "[a] mere 'scintilla' of evidence

supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587.

Moreover, the non-movant bears "the burden of coming forward with sufficient evidence on *each element* that must be proved." Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990) (emphasis in original). If "a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," Rule 56(c) mandates that summary judgment be entered against that party. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### III.  DISCUSSION

In this action, plaintiff seeks redress pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations arising out of treatment occurring on or around September 13, 2003, and September 23, 2003, when he was allegedly placed in a dayroom, as well as a fenced containment area while incarcerated at Fountain. For the reasons set forth below, the Court finds that plaintiff has failed to establish a constitutional violation and thus it is recommended that defendants' Motion for Summary Judgment be granted and plaintiff's claims be dismissed with prejudice.

In his Complaint, plaintiff names Warden Jerry Ferrell, Warden Walter Myers, and Correctional Officer Supervisor I Lieutenant Richard Hetrick as defendants, claiming that they violated his Eighth and Fourteenth Amendment rights on one or more occasions by allowing him to be

8

awakened at a very early hour, allowing him to be placed in a dayroom with harsh conditions for

several hours, and then allowing him to be contained in a fenced area on the outside the facility, likewise

with harsh conditions.  Defendants deny plaintiff's allegations and assert that they are immune to suit

under the Eleventh Amendment and principles of qualified immunity.[6]

Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress. . . .

42 U.S.C. § 1983 (1994).

Plaintiff's claim that his constitutional rights under the Eighth and Fourteenth Amendments have

been violated based upon inhumane conditions of confinement should be dismissed with prejudice for

---

[6] Plaintiff does not specify whether he is suing defendants in their official or individual capacities or both.  Thus, the Court will consider both.  As state officials, defendants are absolutely immune from suit for damages in their official capacities.  See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment).  Moreover, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002).  In determining whether qualified immunity is appropriate in a given case, "[t]he court must first ask the threshold question whether the facts alleged, taken in the light most favorable to the plaintiffs, show that the government official's conduct violated a constitutional right."  Dalrymple, 334 F.3d at 995 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  Having found herein that plaintiff's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201.

the following reasons.[7]  The Eighth Amendment to the United States Constitution states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  "The 'cruel and unusual punishments' standard applies to the conditions of a prisoner's confinement." Chandler v. Crosby, 379 F.3d 1278, 1288 (11th Cir. 2004) (citing Rhodes v. Chapman, 452 U.S. 337, 345-46, 101 S. Ct. 2392, 2398-99, 69 L. Ed. 2d 59 (1981)).  The Eighth Amendment, however, "does not authorize judicial reconsideration of 'every governmental action affecting the interests or well-being of a prisoner.'" Campbell v. Sikes, 169 F.3d 1353, 1362 (11th Cir. 1999) (quoting Whitley v. Albers, 475 U.S. 312, 319, 109 S. Ct. 1078, 1084 (1988)).   Furthermore, "the Constitution does not mandate comfortable prisons."  Rhodes, 452 U.S. at 349, 101 S. Ct. at 2400.  "If prison conditions are merely 'restrictive and even harsh, they are a part of the penalty that criminal offenders pay for their offenses against society.'" Chandler, 379 F.3d at 1288-89 (quoting Rhodes, 452 U.S. at 347, 101 S. Ct. at 2399).  Prison conditions violate the Eighth Amendment only when they involve the wanton and unnecessary infliction of pain.  Id.

In DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 109 S. Ct. 998 (1989), the United States Supreme Court reiterated the State's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty

---

[7]Despite plaintiff's reference to alleged violations of both the Eighth and the Fourteenth Amendments, it is the Eighth Amendment that applies here, as plaintiff is a convicted prisoner.  Further, "the standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments." Marsh v. Butler County, Ala., 268 F.3d 1014, 1024 n. 5 (11th Cir. 2001) (en banc).  In this case, we refer only to the Eighth Amendment.

> to assume some responsibility for his safety and general well-being. . . . The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs -- *e.g.*, food, clothing, shelter, medical care, and reasonable safety -- it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

DeShaney, 489 U.S. at 199-200, 109 S. Ct. at 1005-1006 (citations omitted).

In order to prevail on an Eighth Amendment inhumane conditions of confinement claim, an inmate must make both an objective and a subjective showing.  First, the inmate must prove that the conditions of confinement were, "objectively, 'sufficiently serious'" so as to amount to the denial of a basic human need.  Chandler, 379 F.3d at 1289 (quoting Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992)).  A prisoner must prove the denial of "the minimal civilized measure of life's necessities."  Chandler, 379 F.3d at 1289-90 (quoting Hudson, 503 U.S. at 9, 112 S. Ct. at 1000).  The challenged condition must be "extreme."  Id.  Although an inmate "need not await a tragic event" before seeking relief, Helling v. McKinney, 509 U.S. 25, 33, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993), he must at the very least show that a condition of his confinement pose[s] "an unreasonable risk of serious damage to his future health" or safety, id. at 35, 113 S. Ct. at 2481. Moreover,

> the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged condition of confinement].  It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk.  In other words, the prisoner must show that the risk of which he complains is not one that today's society

11

chooses to tolerate.

Id. at 36, 113 S. Ct. at 2482.

Second, the inmate must prove that the prison official was subjectively "deliberately indifferent" to a substantial risk of harm. Farmer v. Brennan, 511 U.S. 825, 828-29, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837, 114 S. Ct. at 1979. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Id. at 838, 114 S. Ct. at 1979. In addition, prison officials are not liable even if they actually knew of a risk if they responded reasonably to the risk. Id. at 844, 114 S. Ct. at 1982-83. Moreover, "[a] plaintiff must also show that the constitutional violation caused his injuries." Marsh v. Butler County, Ala., 268 F. 3d 1014, 1028 (11th Cir. 2001) (en banc) (alteration in original).

Having set forth the general legal principles applicable to plaintiff's claim, the Court now turns to the facts. As the basis for his Eighth Amendment unconstitutional conditions of confinement claim, plaintiff contends that he has on occasion been awakened very early in the morning and on occasion been forced to remain in a dayroom for 2-3 hours, which was cold and had no bathroom facilities nor water fountains. (Doc. 1; doc. 17). Further, plaintiff alleges that after leaving the dayroom, he has occasionally been taken to an outdoor fenced area where he would have to remain for numerous hours during the day. (Id.). According to plaintiff, this area was directly in the hot sun, was subject to an

12

infestation of bugs, was wet from urine, had a terrible odor, and was directly in public view.  (Id.).

Defendants dispute the allegations made by plaintiff regarding the conditions of both the dayroom and the outdoor containment area.  (Doc. 12, Exs. A, B, and C).  Warden Ferrell has testified in his affidavit that plaintiff was confined in the subject indoor and outdoor areas of the institution only after refusing to work on five occasions.[8]  (Id., Ex. B).  According to defendants, plaintiff's particular assigned job was unpopular among inmates at Fountain.  (Id.).  Moreover, when inmates refused to work, rather than allow them to return to their dorms to sleep or watch television, inmates were placed in the outdoor confinement area for as long as their work squad was working.  (Id.).

Under the circumstances of this case, plaintiff's allegations related to his treatment, even if proven, do not amount to the denial of a basic human need, see DeShaney, 489 U.S. at 199-200, nor do they evidence a deliberate indifference to a substantial risk of serious harm to plaintiff's health or safety.  See Farmer, 511 U.S. at 837-38.  Requiring plaintiff to remain in a  cold room[9] for 2-3 hours on two occasions without facilities simply is not "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk."  Helling at 509 U.S. 25, 36.  Moreover, although there is a factual dispute concerning why plaintiff was required to stay in the fenced area for 7-10 hours, there is no dispute that plaintiff was provided food, water, toilet facilities, seating and the ability to move

---

[8]Attached to defendant Ferrell's affidavit are five institutional incident reports documenting plaintiff's refusal to work on the following dates: September 8, 2003; September 10, 2003; September 17, 2003; October 16, 2003; and October 29, 2003. (Doc. 12, Ex. B).  The incident report dated September 10, 2003, notes specifically that the "sally port annex has porta toilet facilities available, sack lunches and water are furnished to the inmates."  (Id.).  A report dated September 17, 2003, also documents plaintiff's refusal to work and his being placed in the "annex area," which was noted to be "equipped with a portable toilet and drinking water for inmates placed in this area."  (Id.).

[9] The court notes that plaintiff alleges that the violations occurred in September in South Alabama.

13

around.   Although plaintiff avers that gloves, hats and other proper cold weather clothing were not

provided,  he also avers he was required to stand in the hot sun.  Plaintiff has not supported either of

these inconsistent allegations with the specificity or evidence needed to withstand summary judgment.

Furthermore, plaintiff has submitted no medical records evidencing any subsequent disability or

infirmity arising from the alleged treatment, and even if the Court were to assume that plaintiff suffered

the injuries he claims, *i.e.*, high blood pressure, "faitness," fatigue, and vomiting, those physical

conditions are nothing more than *de minimis*.[10]   See Alexander v. Tippah County, Mississippi, 351

F.3d 626, 631 (5th Cir. 2003) (holding that nausea and vomiting were *de minimis* injuries); Todd v.

Graves, 217 F. Supp. 2d 958, 960 (S.D. Iowa 2002) (holding that elevated blood pressure,

aggravated hypertension, dizziness, insomnia, and loss of appetite were *de minimis*); and Canell v.

Multnomah County, 141 F. Supp. 2d 1046, 1053 (D. Oregon 2001) (pain in hands, elevated blood

pressure, and stress were *de minimis* complaints").  While plaintiff claims a psychological injury, the

Court notes that it has been held that "[a] claim of psychological injury does not reflect the deprivation

of the minimal civilized measures of life's necessities that is the touchstone of a conditions-of-

confinement case."  Wilson v. Yaklich, 148 F.3d 596, 601 (6th Cir. 1998) (quoting Babcock v. White,

102 F.3d 267, 272 (7th Cir. 1996)), cert. denied, 525 U.S. 1139, 119 S. Ct. 1028, 143 L. Ed. 2d 38

(1999) (internal citations and quotation marks omitted).  See also Billingsley v. Shelby County Dept. of

Correction, No. 02 29203, 2004 WL 2757915, *7 n.3 (W.D. Tenn. Nov. 24, 2004) (denying an

---

[10]Moreover, plaintiff has failed to show that his *de minimis* injuries were even caused by the
alleged constitutional violation, as required by the Eleventh Circuit in Marsh v. Butler County, Ala., 268
F. 3d 1014, 1028 (11th Cir. 2001) (en banc) (alteration in original) ("A plaintiff must also show that the
constitutional violation caused his injuries.").

Eighth Amendment conditions of confinement claim because such cases require a showing of *extreme*

deprivation for which a claim of psychological injury will not suffice).

Plaintiff has simply not alleged prison conditions which "involve the wanton and unnecessary

infliction of pain."[11]  Rhodes, 452 U.S. at 347, 101 S. Ct. at 2399.  Considering the evidence in the

light most favorable to plaintiff, the question is whether a jury could reasonably conclude that

defendants violated plaintiff's rights under the Eighth Amendment.  Under the circumstances of this

case, the Court finds that plaintiff's allegations fail to establish a constitutional violation.

If a party "fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial," Rule 56(c) mandates

that summary judgment be entered against the nonmovant.  Celotex Corp., 477 U.S. at 322.  "No

material issues can be in dispute where the plaintiff's evidence fails to establish a constitutional

violation."  Bennett v. Parker, 898 F.2d 1530, 1534 (11th Cir. 1990).  Therefore, since no

---

[11]However, even if the Court were to assume that plaintiff has alleged a constitutional violation based on his conditions of confinement, plaintiff would still be unable to recover his requested relief for psychological harm as a result of 42 U.S.C. § 1997e(e), which states that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  To make a successful claim for mental or emotional injury, "a prisoner must allege more than a *de minimis* physical injury in order to satisfy the requirement of section 1997e(e)."  Harris v. Garner, 190 F.3d 1279, 1287 (11th Cir.), modified in part by Harris v. Garner, 216 F.3d 970 (11th Cir. 2000), cert. denied, 532 U.S. 1065 (2001).  As plaintiff has failed to allege more than *de minimis* injuries, he would be unable to withstand the operation of 42 U.S.C. § 1997e(e).  See Alexander v. Tippah County, Mississippi, 351 F.3d 626, 631 (5th Cir. 2003) (holding that nausea and vomiting were *de minimis* injuries and would not support a claim for emotional injuries under 42 U.S.C. § 1997e(e)); Todd v. Graves, 217 F. Supp. 2d 958, 960 (S.D. Iowa 2002) (holding that elevated blood pressure, aggravated hypertension, dizziness, insomnia, and loss of appetite were *de minimis* and would not support a claim for emotional suffering."); and Canell v. Multnomah County, 141 F. Supp. 2d 1046, 1053 (D. Oregon 2001) (pain in hands, elevated blood pressure, and stress were *de minimis* complaints and did "not constitute 'physical injury' under the PLRA.").

constitutional violation has been established, defendants' Motion for Summary Judgment is due to be granted, and plaintiff's claims be dismissed with prejudice.

<u>IV.  CONCLUSION</u>

Based on the foregoing, the Court concludes that defendants are entitled to summary judgment in their favor on all claims asserted against them by plaintiff.  Accordingly, it is recommended that defendants' Motion for Summary Judgment be **GRANTED** and that the entirety of plaintiff's Complaint against defendants be **DISMISSED WITH PREJUDICE**.

The attached sheet contains important information regarding objections to the Report and Recommendation.

**DONE** this <u>5th</u> day of April, 2005.

<u>/s/ Kristi D. Lee</u>
**KRISTI D. LEE**
**UNITED STATES MAGISTRATE JUDGE**

16

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.     **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.     **Opposing party's response to the objection.**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.     **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.